THOMAS M. BRUEN (SBN 63324)
ERIK A. REINERTSON (SBN 218031)
LAW OFFICES OF THOMAS M. BRUEN
A Professional Corporation
1990 N. California Boulevard, Suite 20
Walnut Creek, CA  94596
Telephone:      (925) 708-4149
Email:             tbruen@tbsglaw.com
                      ereinertson@tbsglaw.com

Attorneys for Plaintiff
BROWNING-FERRIS INDUSTRIES OF CALIFORNIA, INC.

**UNITED STATES DISTRICT COURT FOR THE**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BROWNING-FERRIS INDUSTRIES OF CALIFORNIA, INC.<br><br>*Plaintiff,*<br>    *vs.*<br><br>SUNSHINE GAS PRODUCERS,<br><br>*Defendant.* | Case No.<br><br>**COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF**<br><br>**CORPORATE DISCLOSURE STATEMENT** |

Plaintiff BROWNING-FERRIS INDUSTRIES OF CALIFORNIA, INC. ("Plaintiff") alleges as follows:

**GENERAL ALLEGATIONS**

1. This is a civil action brought by Plaintiff for the breach by Defendant Sunshine Gas Producers, L.L.C. ("Defendant") of the Amended and Restated Landfill Gas Rights Agreement between Plaintiff and Defendant.

2. Plaintiff is the owner and operator of the Sunshine Canyon Landfill located near Sylmar, California. The landfill is a major disposal facility for non-hazardous municipal solid waste generated throughout Los Angeles County.  The landfill currently receives approximately 9,000 tons of municipal solid waste every weekday. Waste

1  disposed of in the landfill decomposes under anaerobic conditions and generates landfill
2  gas as part of the decomposition process. A significant portion of landfill gas consists of
3  methane, also known as "natural gas."  Methane is a greenhouse gas and is flammable.
4  Plaintiff's Sunshine Canyon Landfill is required under federal and state laws to install
5  and operate a gas collection system to capture landfill gas and to convey the landfill gas
6  to a flare or other emissions control device that will combust the methane and destroy
7  other non-methane gasses that are also a part of landfill gas. Plaintiff conveys and
8  delivers a portion of the landfill gas it collects at Sunshine Canyon to a landfill gas to
9  electric energy (LFGTE) plant.

10      3.     Defendant Sunshine Gas Producers, L.L.C. owns and operates the LFGTE
11 plant located at the Sunshine Canyon Landfill. Defendant's plant combusts and destroys
12 landfill gas in combustion engines at the plant, which use the methane in landfill gas as
13 the fuel source. These engines drive generators that produce electric energy, which
14 Defendant then sells to buyers under electric energy sales agreements.

The Landfill Gas Agreement

16      4.     Plaintiff's and Defendant's mutual rights and obligations regarding landfill
17 gas generated by the landfill are set forth in a written  "Amended and Restated Landfill
18 Gas Rights Agreement," effective December 7, 2007.  The agreement has been modified
19 by three written amendments signed by the parties.  A true and correct copy of this
20 agreement and the three written amendments (collectively, the "Agreement") is attached
21 as Exhibit A and incorporated herein as though fully set forth.

22      5.     The Agreement grants Defendant the right to develop one or more projects
23 at the landfill to convert landfill gas to electric energy or an alternative "Product." Under
24 the Agreement, a "Product" may include electric energy, steam, landfill gas sold as a fuel,
25 or any similar product produced by Defendant from landfill gas. Such Products can be
26 produced per the Agreement at one or more facilities to be permitted and built by
27 Defendant at the landfill. Landfill gas *not* utilized by Defendant under the Agreement is
28

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF

conveyed by Plaintiff's landfill gas collection system to one of several flares owned by Plaintiff that combust the gas.

### Defendant Develops A Gas To Electric Energy Plant

6. Defendant permitted and commenced operation in 2014 of the Landfill Gas to Electric Energy (LFGTE) plant at the landfill. Defendant has continued to operate the LFGTE plant to date.

### Defendant's One-Time Option to Elect to Use Excess Landfill Gas

7. The Agreement recognizes that after Defendant has placed in operation its Initial Project for the conversion of landfill gas into a Product (in this case, the LFGTE plant produces electricity), additional quantities of landfill gas over and above the design capacity of the LFGTE plant may become available due to the continuing disposal and decomposition of solid waste at the landfill.  The Agreement gives Defendant a one-time-only option to use the additional quantities of landfill gas when it becomes available.  The Agreement states that this additional or "Excess Gas" will be measured in incremental units defined as Additional Landfill Gas Units ("ALGUs") of 1,152 million British Thermal Units per day ("MMBtus") each.  The Agreement provides that if Defendant does not exercise its one-time-only option to elect to utilize each ALGU by making its first quarterly Excess Gas Fee payment in arrears, Defendant shall permanently forfeit its rights to use the ALGU. This forfeiture would then allow Plaintiff to negotiate agreements with other renewable energy providers to permit and design other renewable energy facilities at the landfill that would use the ALGUs.

### Plaintiff Notifies Defendant Of Availability of Excess Gas

8. Defendant's LFGTE plant began operations in 2014 with a design or nameplate capacity to combust up to 9,600 standard feet per cubic minute of landfill gas. Thereafter, Plaintiff periodically met with Defendant to inform Defendant of the additional gas being generated at the landfill.  By 2019 Plaintiff's representatives had informed Defendant that the landfill had five ALGUs that Defendant could utilize. On September 14, 2020, Plaintiff sent Defendant a letter notifying Defendant of the

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF

availability of five ALGUs and confirming Defendant's right to elect or permanently forfeit its right to use the Excess gas.

9. On October 12, 2020, Defendant sent Plaintiff a letter verifying that five ALGUs were available and acknowledging its one-time option to utilize the Excess Gas. Defendant's letter stated in part:

> *As mentioned previously, once Sunshine has verified the ALGUs available, we acknowledge that we have "two (2) years from September 14, 2020, in which to (A) reach the Initial Delivery Date for another project or (B) utilize the Landfill Gas in [our] Initial Project." We also agree that if another project is not ready after those twenty-four months then we "shall either (i) begin paying [Republic] the relevant Excess Gas Fee . . . or (ii) forfeit [our] rights to such Additional Landfill Gas Units."*

Plaintiff Cooperates with Defendant in Permitting New RNG Plant

10. By October 2020, Defendant had told Plaintiff that Defendant would permit and build a renewable gas plant ("RNG" plant) that would use the Excess Gas and clean, compress and sell the methane derived from landfill gas as a Product under the Agreement. Plaintiff cooperated with Defendant in developing Defendant's proposed plans and permitting the new RNG plant. The parties agreed on the tentative location at the landfill property for the new RNG plant. Defendant proposed to build the new RNG plant that would utilize the five available ALGUs and the landfill gas quantities that the LFGTE plant was using. Defendant proposed to continue to operate the LFGTE plant until the new RNG plant began operation. Plaintiff relied to its detriment on Defendant's statements in October of 2020 that Defendant would utilize all five ALGUs in a new RNG plant that Defendant would permit and construct, by not marketing the five ALGUs to other renewable gas project developers.

11. If, in October 2020, Defendant had notified BFIC that it elected not to use the Excess Gas, Defendant could and would then have marketed this Excess Gas to other renewable landfill gas energy developers. At that time, the five ALGUs would have had a significantly greater value than today because landfill gas generation is a diminishing

asset. In particular, this asset loses significant value as the date for the closure of a landfill approaches. The Sunshine Canyon Landfill has a permit condition that requires the closure of the landfill in 2037.

<u>Defendant's Obligation to Pay for Delays In Using Excess Gas</u>

12. The Agreement provides that if Defendant did not utilize the Excess Gas in the five ALGUs in the existing LFGTE plant or a new Project within two years after Defendant made its October 2020 election, then at the end of the two-year permitting period, Defendant must begin making quarterly Excess Gas Fee payments to Plaintiff. The Excess Gas Fee was to be paid for each calendar quarter after the end of the two years until Defendant began utilizing the Excess gas. Once Defendant made the election to use the five ALGUs by paying the Excess Gas Fee for the first quarter it was due, Defendant was obligated to continue making the Excess Gas Fee payments until a new Project is brought online to utilize the five ALGUs. The Agreement contains a formula for calculating the quarterly Excess Gas Fee payment that uses a floating natural gas price index to determine the amount of each quarterly Excess Gas Payment for the prior calendar quarter (or portion thereof) in which Defendant did not use the Excess Gas. The natural gas price index is the Southern California Border Average price for natural gas in $MMBtus, published in the Natural Gas Intelligence (NGI) Bidweek survey.

13. Once Defendant was to use the ALGUs of Excess Gas in its existing LFGTE Facility plant or a new Project, Plaintiff would then be paid quarterly royalties per the terms of the Agreement based on the revenues generated from the use of the Excess Gas. Hence, the Excess Gas Fee operates as a substitute for the royalties that Plaintiff would have otherwise received if Defendant had started using the Excess Gas ALGUs within two years.

<u>Defendant Makes The First and Second Excess Gas Fee Payments</u>

14. As of September 14, 2022, Defendant was still engaged in designing and permitting a new RNG facility at the landfill, so the RNG plant was not yet operational. As a result, Defendant made the first Excess Gas Fee payment to Plaintiff for the partial

5

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF

quarter ending September 30, 2022, on October 20, 2022 in the amount of $637,495.30 and Defendant made the second Excess Gas Fee payment for the fourth quarter ending December 31, 2022, in the amount of $3,623,981.57. This payment was calculated according to the Agreement's formula for the Excess Gas Fee. The parties also agreed that quarterly payments of the Excess Gas Fee were to be made in arrears by the twentieth day following the end of the prior calendar quarter.

Defendant States It Will Not Pay Excess Gas Fee
But Still Wants To Develop The RNG Project

15. In this case, Defendant has breached the Agreement by electing its one-time-only option to use the five ALGUs and then in April of 2023, by attempting to retroactively forfeit its right to use the ALGUs by failing to pay Plaintiff the contractually-required Excess Gas Fees for the first quarter of 2023 *in arrears*, which was owed to Plaintiff and due April 20, 2023.

16. On April 20, 2023, Plaintiff received an email from Philip O'Niel, of DTE Vantage, which read as follows:

> *Tim & Victor,*
>
> *Good morning, I hope you are both doing well. I am writing to inform you that Sunshine Gas Producers ("SGP") does not intend to make the Q1 2023 Excess Gas Fee payment. I also want to assure you that SGP remains committed to continuing the development of a new RNG production facility capable of processing all of the landfill gas produced by the Sunshine Canyon Landfill. SGP believes this large-scale RNG facility represents the most valuable path forward for all parties and is uniquely positioned to deliver the project.*
>
> *I would welcome the opportunity to further discuss the project and next steps. John Armstrong and I are both available today at 12:00pm EST. If that time is not convenient, we could also schedule something for Friday. Looking forward to connecting soon.*
>
> *Phil*

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF

17. Plaintiff's counsel emailed a letter to Defendant that same day, stating that Defendant's failure to make the Excess Gas Fee payment by the close of business on April 20, 2023, would breach the Agreement and urged payment by close of business that day.

<u>Plaintiff Then Claims It Will Not Pay the Excess Gas Fee<br>And Will Forfeit Its Rights to Use The Excess Gas</u>

18. On April 21, 2023, Justin Vandeputte, who identified himself as counsel for Defendant, emailed a letter in response to Plaintiff's counsel, which read as follows:

> *Dear Mr. Bruen:*
>
> *We are writing in response to your letter dated April 20, 2023, sent on behalf of Browning-Ferris Industries of California, Inc. ("**BFIC**") regarding the Excess Gas Fee related to the five (5) Additional Landfill Gas Units (the "**ALGUs**") available under that certain Amended and Restated Sunshine Canyon Landfill Gas Rights Agreement, dated as of December 7, 2007 (as so amended, the "**Agreement**"; capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Agreement) by and between BFIC and Sunshine Gas Producers, L.L.C. ("**SGP**") and the subsequent correspondence between the parties regarding the foregoing.*
>
> *Per the terms of the Agreement, SGP has no obligation to pay, or to continue to pay, the Excess Gas Fee for such ALGUs. SGP acknowledges and agrees, however, that non-payment of the relevant Excess Gas Fee with respect to the ALGUs does result in SGP's forfeiture of its rights to such ALGUs. In short, it seems SGP and BFIC simply have different interpretations of the parties' rights and obligations under the Agreement and the subsequent correspondence as it relates to the ALGUs. SGP would welcome the opportunity to meet with BFIC to resolve the parties' differences of opinion regarding this matter. To that end, each member of SGP will make a senior representative available for a call with senior representatives of BFIC to discuss the present situation in hopes of reaching an amicable solution.*

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF

> *Please have your client contact a senior representative of SGP at their earliest convenience so that we may coordinate schedules to discuss the issues outlined herein. SGP looks forward to working with BFIC on a resolution of these matters.*
>
> *Very truly yours, SUNSHINE GAS PRODUCERS, L.L.C.*

### Defendant's Breach of Contract Has Forfeited Its Right to Excess Gas

19. Plaintiff agrees with Defendant's counsel that Defendant, because of its non-payment of the Excess Gas Fee for the first calendar quarter of 2023, has forfeited its right to utilize the five ALGUs, which Defendant has previously informed Plaintiff it would use in October 2020. Plaintiff intends to mitigate its damages by promptly marketing the five ALGUs to another developer if that developer agrees to utilize the five ALGUs in a new landfill gas project. However, as stated above, the value of the five ALGUs has now diminished relative to its value in October 2020.

### Defendant Provided No Prior Notice Of Its Forfeiture Decision

20. Prior to April 20, 2023, Defendant had not informed Plaintiff that Defendant would be refusing to make the Excess Gas Fee payment due April 20, 2023, or that Defendant still intended to pursue the permitting and construction of a new RNG gas plant without making that payment. Prior to April 21, 2023, Defendant had not informed Plaintiff that Defendant would be refusing to make the Excess Gas Fee payment due April 20, 2023, and that Defendant intended to forfeit its right to use the five ALGUs.

### Plaintiff Has Been Prevented For Over Two Years in Marketing the Excess Gas

21. Because of Defendant's conduct, Plaintiff has been disabled from marketing the five ALGUs since October 2020. The evidence at trial will show that the value of the five ALGUs has substantially declined since October 2020 compared to its present value because the generation of landfill gas at the landfill will decline with time once the landfill closes, which under its current permits may occur as early as 2037. Plaintiff has relied to its detriment on Defendant's October 2020 election to utilize all five ALGUs of

1 | Excess Gas. Defendant's conduct has materially interfered with Plaintiff's ability to arrange for another developer to use the Excess Gas-- an arrangement that Plaintiff could have otherwise pursued starting in October 2020.

Plaintiff's Damages

22. By reason of Defendant's conduct, Defendant has breached the Agreement. As a proximate result of Defendant's breach of contract, Plaintiff has suffered damages as set forth below in Plaintiff's count for breach of contract.

**JURISDICTION AND VENUE**

23. This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1332 (diversity jurisdiction) because Plaintiff and Defendant are citizens of different states. Specifically, Plaintiff is a corporation and is incorporated in and has its principal place of business in the State of California. Defendant Sunshine Gas Producers L.L.C. is a limited liability company organized in and having its principal place of business in the State of Michigan. Plaintiff is informed and believes that there are only two members of Defendant: DTE Biomass Energy, Inc. and Archaea Energy, Inc. DTE Biomass Energy, Inc. is a corporation incorporated in and has its principal place of business in the State of Michigan. Archaea Energy, Inc. is incorporated in the State of Delaware and has its principal place of business in Texas. Therefore, there is complete diversity between Plaintiff and Defendant. The amount in controversy in this matter exceeds the sum of $75,000, exclusive of interest and costs.

24. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and the property that is the subject of the action is situated in this district. Further, venue is proper under 28 U.S.C. § 1391(b)(3) because Defendant has consented to the personal jurisdiction of this Court in this judicial district.

\\
\\
\\

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF

## THE PARTIES

25. Plaintiff BROWNING-FERRIS INDUSTRIES OF CALIFORNIA, INC., a California corporation. Plaintiff owns and operates the real property and municipal solid waste disposal facility known as the Sunshine Canyon Landfill.

26. Defendant Sunshine Gas Producers, L.L.C. is a Michigan limited liability company and owns and operates the LFGTE facility at the Sunshine Canyon Landfill.

27. Plaintiff and Defendants are the parties to the Agreement referenced herein.

## FIRST COUNT

(Breach of Contract)

28. Plaintiff incorporates each of the preceding paragraphs by reference as though set forth fully herein.

29. Defendant has breached the Agreement by (1) failing to make the Excess Gas Fee payment of $7,962,416.64 due to Plaintiff no later than April 20, 2023, and (2) by stating that Defendant will not hereafter make that payment. Defendant's statement that it will not make the Excess Gas Payment for the first calendar quarter of 2023 or any further Excess Gas Fee payments constitutes an anticipatory breach of Defendant's future Excess Gas Fee payment obligations.

30. Defendant's conduct as alleged above violated the implied covenant of good faith and fair dealing.

31. By reason of the preceding conduct of Defendant, Defendant has forfeited its right to use the five ALGUs described above and any future ALGUs that may become available at the landfill.

32. Plaintiff has been damaged by Defendant's actions in the following particulars:

    (a) By not paying Plaintiff the Excess Gas Fee of $ 7,962,416.64 for the first calendar quarter of 2023;

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF

      (b)    By reason of Defendant's anticipatory breach of its obligation to make future Excess Gas Fee payments to Plaintiff, for the present value of such future Excess Gas Fee payments, in an amount to be established at trial;

      (c)    By wrongfully retracting its election to use the five ALGUs, thereby diminishing the value of the landfill gas rights that Plaintiff must now attempt to market to other renewable energy developers; and

      (d)    Under the Agreement's indemnity provisions, in the amount of plaintiff's attorneys; fees, expert witness fees, and costs incurred in this litigation.

## SECOND COUNT
(Declaratory Relief)

33.    Plaintiff incorporates each of the preceding paragraphs by reference as though set forth fully herein.

34.    The parties agree that Defendant has now permanently forfeited its right to use the five ALGUs identified in Plaintiff's notice to Defendant of the availability of the five ALGUs described in Plaintiff's notice to Defendant dated September 14, 2020, and in Defendant's October 12, 2020 letter exercising its option to utilize such ALGUs.

35.    An actual dispute and controversy exists between Plaintiff and Defendant concerning their mutual rights and obligations under the Agreement. Plaintiff contends that Defendant must pay the Excess Gas Fee for the first quarter of 2023. Plaintiff contends that Defendant has committed both a breach and an anticipatory breach of the Excess Gas Fee payment provisions in the Agreement. Plaintiff contends that Defendant has forfeited its rights to use future ALGUs. Plaintiff contends it is entitled to recover the present value of future Excess Gas Fees due under the Agreement. Plaintiff contends that Defendant's breach of contract entitles Plaintiff to terminate the Agreement. Plaintiff contends that Defendant's statements to Plaintiff that Defendant will no longer make Excess Gas Fee payments to Plaintiff is an anticipary breach that waives Defendant's ability to cure its default within thirty days after notice of its breach from Plaintiff. Defendant disputes Plaintiff's contentions.

**WHEREFORE,** Plaintiff prays for judgment in its favor as follows:

1. An award of money damages;
2. A declaratory judgment that Defendant has breached and is in material default under the Agreement;
3. That Defendant has no further rights to landfill gas generated by the landfill and that the Agreement is terminated;
4. Plaintiff's costs of litigation, including attorney's fees, expert witness fees; and,
5. Any and all other relief that the Court deems proper and just, or as may be permitted by law.

DATED: April 25, 2023

LAW OFFICES OF THOMAS M. BRUEN
A Professional Corporation

/s/  Erik A. Reinertson

Attorneys for BROWNING-FERRIS INDUSTRIES OF CALIFORNIA, INC.

COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY RELIEF

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. Civ. P. 7.1, the undersigned, counsel of record for Plaintiff BROWNING-FERRIS INDUSTRIES OF CALIFORNIA, INC. certifies that the following party may have a pecuniary interest in the outcome of this case. These representations are made to enable the Court to evaluate possible disqualification or recusal.

Plaintiff is a wholly-owned subsidiary of REPUBLIC SERVICES, INC., a publicly-traded company.  REPUBLIC SERVICES, INC., does not have a parent corporation, and as of March 15, 2023 no publicly held corporation holds 10% or more of its stock.

DATED: April 25, 2023

LAW OFFICES OF THOMAS M. BRUEN
A Professional Corporation

/s/  Erik A. Reinertson

Attorneys for BROWNING-FERRIS INDUSTRIES OF CALIFORNIA, INC.

COMPLAINT FOR BREACH OF CONTRACT